IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | Civil Case No. 2:14-cv-02093-PMD-MGB |
| | ) | |
| **Plaintiff,** | ) | |
| v. | ) | |
| | ) | |
| TWO LAND ROVER DEFENDERS, | ) | REPORT AND RECOMMENDATION |
| VIN SALLHAB7BA293335 | ) | |
| VIN SALLHAD7BA241521 | ) | |
| | ) | |
| **Defendants in Rem.** | ) | |
| | ) | |
| _____ | ) | |

In this civil forfeiture *in rem* action, the claimant Geoffrey Wattiker, pro se, has filed a "Motion to Dismiss Amended Complaint Under Rule 12(b) for Failure to State a Claim" (DE#29). The United States opposes the motion (DE#30). This matter was referred to the Magistrate Judge for a Report and Recommendation pursuant to Local Rule 73.02(B)(2)(a), D.S.C., and 28 U.S.C. § 636(b)(1)(B). Having carefully considered the pleadings, the parties' briefs, and applicable authority, the undersigned recommends that the claimant's motion be **denied**, for the following reasons:

**I. Standard of Review**

In civil actions generally, the complaint must contain "a short and plain statement of the grounds for the court's jurisdiction" as well as "a short and plain statement of the claim showing that the [plaintiff] is entitled to relief." Fed.R.Civ.P. 8(a). "To survive a motion to dismiss [under Rule 12], a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

Although the pro se claimant labels his motion as one under Civil Rule 12, the motion is actually subject to Rule G of the Supplemental Rules for Admiralty or Maritime Claims and

Asset Forfeiture Actions, which specifically "governs a forfeiture action in rem arising from a federal statute." Supplemental Rule G(2)(f) provides that the verified complaint must "identify the statute under which the forfeiture action is brought; and state sufficiently detailed facts to support a reasonable belief that the government will be able to meet its burden of proof at trial." See, e.g., <u>U.S. v. $548,190.29 in funds seized from bank account number  U.S. v. $548,190.29 in funds seized from bank account number xxxxx1736 in the name of TH Snipes and Sons, Inc</u>., 2013 WL 2338710, *2 (D.S.C. 2013).[1]

The language of Supplemental Rule G "requires a more particularized complaint than is demanded in civil actions generally," 12 C. Alan Wright, A. Miller, & R. Marcus, Fed. Prac. & Proc. Civ. § 3242 (2d ed.) ("this requirement for added specifics is thought appropriate because of the drastic nature of those remedies … it fortifies the procedural-due-process protections against improper use of these remedies"). The Fourth Circuit Court of Appeals has explained that the Government must "state the circumstances giving rise to the forfeiture claim with sufficient particularity" to allow a claimant to conduct a "meaningful investigation of the facts and draft a responsive pleading." <u>United States v. Mondragon</u>, 313 F.3d 862, 867 (4th Cir. 2002).

## II. Review Under Supplemental Rule G

### A. Whether the Amended Complaint "identifies" the forfeiture statutes

Review of the verified Amended Complaint confirms that it easily meets the specific requirements of Supp. Rule G (as well as the more general requirements of Rule 12). In the very first paragraph ("Nature of the Action"), the Amended Complaint plainly identifies the two customs-specific federal statutes under which the forfeiture action is brought, stating: "the Defendant Vehicles are subject to forfeiture pursuant to 19 U.S.C. §§ 1595a(c) and 1627a(a)(2)."

---

[1] Supplemental Rule A(2) provides that the "Federal Rules of Civil Procedure also apply to the foregoing proceedings except to the extent that they are inconsistent with these Supplemental Rules."

(DE# 22, ¶ 1). The Amended Complaint then cites and describes the various underlying statutes and regulations that were violated by the attempted importation of the noncomplying vehicles. (Id. at ¶ 6, "Statutory Authority for Forfeiture").

After reciting the alleged facts of the case at considerable length, the Amended Complaint concludes that the vehicles are subject to forfeiture: 1) pursuant to 19 U.S.C. § 1595a(c)(2)(A) because their importation was contrary to law due to their noncompliance with federal motor vehicle safety standards; 2) pursuant to 19 U.S.C. § 1595a(c)(2)(A) because their importation was contrary to law due to their noncompliance with EPA emission requirements; and 3) pursuant to 19 U.S.C. § 1627a(a)(2) because the claimant attempted to import vehicles whose VIN numbers had been removed, obliterated, tampered with, or altered. (Id. at ¶ 7ff-hh, "Basis for Forfeiture").

In short, the Amended Complaint plainly identifies the statutes "under which the forfeiture action is brought," as required by Supplemental Rule G.

### B. Whether the Amended Complaint sufficiently pleads "detailed facts …"

As for Supplemental Rule G's additional requirement that a complaint must sufficiently state "detailed facts to support a reasonable belief that the Government will be able to meet its burden of proof at trial," review of the Amended Complaint confirms that it easily satisfies this requirement. The factual allegations of the Amended Complaint are quite detailed, as the following summary demonstrates:

On January 9, 2013, the claimant attempted to import two Land Rover vehicles into the United States through the Port of Charleston, South Carolina. (DE# 22, ¶ 7a). Neither vehicle bore a certification label or tag affixed by the manufacturer certifying that the vehicle complies with applicable motor safety standards. (¶7d-e). Neither vehicle had a certificate of conformity

issued by the Environmental Protection Agency ("EPA"), and neither vehicle was manufactured to meet EPA emission requirements. (¶ 7j-m). Wattiker sought "age" exemptions for both vehicles, alleging that they were 1985 and 1987 models.[2] He completed HS-7 declarations representing that both vehicles were 25 years or older. (¶ 7b). He also completed EPA Form 3520-1 for both vehicles and marked the box for Code E indicating that they were exempt from the requirements of the Clean Air Act because they were "at least 21 years old and in original unmodified configuration." (¶ 7g-h).

During customs inspection, United States Customs and Border Protection ("CBP") inspectors noticed that the vehicles "appeared to have characteristics of later model vehicles, as well as VIN stamping inconsistencies." (¶ 7o). They contacted the National Highway Safety Transportation Administration ("NHSTA") for assistance in determining the age of the vehicles. The NHSTA found that the vehicles did not have 17-character VINs stamped into their frames and differed in material ways from the vehicles originally manufactured with those VINs. For example, the vehicles had disc brakes on the rear axles, which are not found on Land Rover Defenders manufactured in 1985 or 1987. The vehicles' engines were not the same engines fitted in Land Rover Defenders manufactured in 1985 or 1987, but instead were offered in Land Rover Defenders manufactured from 1994 to 1998. (¶ 7o). NHTSA contacted Land Rover, but was still unable ascertain the actual identity and age of the vehicles.

On February 13, 2013, CBP officers seized the two vehicles. (¶ 4). On March 27, 2013, Wattiker filed for administrative relief with the CBP. He admitted the issues found by inspectors but claimed that "maintenance, repairs, replacement, and repainting" did not disqualify the vehicles from the claimed exemptions. (¶ 7q). The CBP sought assistance from the NHTSA. The

---

[2] In his motion, the pro se claimant inconsistently states that the "Defendant Vehicles are 20 and 31 years old respectively." (DE# 29 at 10).

NHTSA found that both vehicles had been rebuilt or remanufactured, but because Wattiker did not provide sufficient information about when this occurred, the vehicles' actual identity and/or precise remanufacture date could not be determined. The NHTSA did ascertain that the remanufacture date was within 25 years of when Wattiker attempted to import the vehicles. (¶ 7r fn.1). The CHP offered to settle the case for $135, seizure and storage costs, and the stipulation that Wattiker export the noncomplying vehicles to another country. (¶ 7s). Wattiker refused and filed a supplemental petition. (¶ 7t).

Upon further investigation of the supplemental petition, the NHTSA determined that in both vehicles, the VIN had been ground off the frame or obliterated by a galvanization process. (¶ 7v-2). In addition, the metal plate with the VIN affixed was not in its original position or was missing altogether. (¶ 7v-3, 15). The vehicles did not bear a certification label or tag affixed by the manufacture certifying that each vehicle complied with applicable motor vehicle safety standards.

For the vehicle with VIN SALLDHAB7BA293335, part of the VIN appeared to have been abraded down and re-stamped. (¶ 7v7). That vehicle is a four-door model, but the VIN number was originally assigned to a two-door model by the manufacturer (Land Rover). (¶ 7v4). The vehicle has a 110 inch wheelbase, Double Cab, which was not manufactured until 2000 or after, as well as a diesel engine typical of models in 1994 or later. (¶ 7v5). Other inconsistencies include a gearbox manufactured between 1994 to 2006, disc brakes built for 1990 or later models, 60th Anniversary Edition SVX badging for 2008 models, a 2007 (or later) hood, and a galvanized chassis/steering wheel/ body paint color that were all different from the vehicle originally assigned that VIN. (¶ 7v4-12). In addition, Wattiker provided a registration certificate that had a *different* VIN. (¶ 7v13).

For vehicle with VIN SALLDHAD7BA241521, the VIN is missing from the frame, and the VIN plate is atypical and not mounted correctly. (¶ 7v15-16). The vehicle has a diesel engine with an engine number from a 1995 Discovery model (rather than the original gasoline engine in a Defender), has rear axles different form the heavy duty rear axles for 1985 models, has an atypical transmission for a 1985 model, has a galvanized (unoriginal) chassis, has badging used from 1991 to 2006, has a steering wheel first introduced in model year 1992, has rear disc brakes first available on 1990 models, and numerous other attributes that all post-date 1985. (¶ 7v18-27).

The NHTSA concluded the vehicles did not match their VINs. On July 15, 2013, the CBP denied relief to Wattiker because the vehicles were noncomplying and none of the requested exemptions applied. (¶ 7v). Both vehicles remain in CBP custody in storage. (¶ 4). Wattiker continued to pursue the case, and on November 18, 2013, requested that CBP send it to the U.S. Attorney's Office. Settlement negotiations over the next few months were not successful.

On March 17, 2014, the NHTSA sought an evaluation by the EPA regarding the vehicles' admissibility for importation. (¶ 7aa--cc). The EPA found that the vehicles' current engines were not original and did not comply with applicable regulations. For example, in the vehicle with VIN: SALLDHAB7BA293335, the replacement engine was not the same model as the original engine and was not "substantially similar." In the vehicle with VIN: SALLDHAD7BA241521, the original 2.5 liter gas engine was "completely different" from the vehicle's current turbo diesel engine. The EPA indicated that both vehicles had replacement engines with different specifications, were not EPA-certified, and were not eligible for importation under the exemption for vehicles older than 21 years. (¶ 7dd--ee).

Taking all these factual allegations as true, the Amended Complaint sufficiently states "detailed facts to support a reasonable belief that the Government will be able to meet its burden of proof at trial," as required by Supp. Rule G. See 19 U.S.C. § 1615 ("Burden of proof in forfeiture proceedings"). The Amended Complaint identifies the forfeiture statutes and provides detailed factual allegations. The Amended Complaint has provided the claimant with adequate notice of the nature of this forfeiture action and has afforded adequate opportunity to conduct "meaningful investigation of the facts and draft a responsive pleading." The Amended Complaint satisfies the requirements of Supp. Rule G.

### III.  Analysis of the Pro Se Claimant's Arguments

Wattiker moves to dismiss, arguing in his own words that: 1) "the allegations of the complaint … fail to satisfy the requirements and plain language of the forfeiture statutes;" 2) the United States cannot achieve forfeiture "by assuming that the Defendant Vehicles violate some regulation somewhere, without identifying any regulation anywhere;" 3) this action is "out of time" based on "inexcusable and excessive delays by the Government in bringing this action" which allegedly violate his right to due process under the Fifth Amendment to the United States Constitution; 4) such delays also violate controlling statutes which require that forfeiture actions be prosecuted "immediately," "forthwith," "without delay," "and promptly;" 5)  the United States cannot meet its burden of proof at trial "because the allegations in the Amended Complaint contain an inherent contradiction which makes it logically impossible to prove that the Defendant Vehicles are subject to forfeiture;" 6) "the Government's inability to state a valid, sustainable justification for seizing the Defendant Vehicles demonstrates the fact that the seizure was a deliberately unlawful exercise of police power;" and 7) "the Government's motive in

pursuing the goal of destruction of the Defendant Vehicles … is based on an improper relationship between the NHTSA and Land Rover, a private company." (DE# 29, 1-2).

The pro se claimant's lengthy arguments are based largely on misapprehensions of law and mischaracterizations of fact. Such arguments needlessly complicate the relatively straightforward matter at hand, namely, whether the Amended Complaint sufficiently states cognizable claims for forfeiture. Although the claimant attempts to dispute alleged facts and attaches various exhibits to his motion to dismiss, consideration of the evidence is not appropriate at this level of review.

**Arguments 1, 2, and 5: Alleged "Failure to State a Claim"**

The pro se claimant makes several related arguments: 1) "the allegations of the complaint … fail to satisfy the requirements and plain language of the forfeiture statutes;" 2) the United States cannot achieve forfeiture "by assuming that the Defendant Vehicles violate some regulation somewhere, without identifying any regulation anywhere," and 5) "the allegations in the Amended Complaint contain an inherent contradiction which makes it logically impossible to prove that the Defendant Vehicles are subject to forfeiture."

First, Wattiker argues that "19 U.S.C. § 1627a permits forfeiture only when an individual imports a vehicle about which he *knows* that the identification number has been deliberately removed, obliterated, tampered with, or altered to facilitate a theft." (DE# 29 at 4, emphasis in original). He is simply wrong. The United States correctly points out that the claimant has misread the statute. (DE# 30 at 16, "The 'knowing' requirement modifies the importation language – not the removal, obliteration, tampering and altering element."). The United States contrasts the language of 19 U.S.C. § 1627a with the language of the criminal "VIN tampering" statute, 18 U.S.C. § 2321(a), which does make it a criminal offense to possess a vehicle while

*knowing* that its VIN has been tampered with. As the United States correctly asserts, the Amended Complaint's allegations pertaining to the missing, tampered, obliterated, or altered VINs, coupled with the claimant's attempt to import vehicles with those VINs, sufficiently states a cause of action under 19 U.S.C. § 1627a. This renders much of Wattiker's remaining argument pointless, i.e. his contention that the regulations at 49 C.F.R. § 541 et seq., are "theft prevention regulations" that were "not intended to punish people importing old vehicles that were repaired by their former owners." (DE# 29 at 3-5).

To the extent Wattiker's argument is a re-stated version of the "innocent owner defense," the Civil Asset Forfeiture Reform Act of 2000 ("CAFRA"), at 18 U.S.C. § 983(i)(2)(A), expressly excludes forfeiture actions brought under Title 19 from its innocent-owner provision. United States v. Davis, 648 F.3d 84, 93 (2d Cir. 2011) (discussing the "customs carve-out" of CAFRA). The United States correctly points out that the innocent owner defense does not apply to *in rem* forfeiture actions under the customs-specific forfeiture statutes at issue here. (DE# 30 at 14), citing Calero-Toledo v. Pearson Yacht Leaving Co., 416 U.S. 663, 683 (1974) ("the innocence of the owner of property subject to forfeiture has almost uniformly been rejected as a defense" in *in rem* proceedings) and United States v. Broadening-Info Enterprises, Inc., 462 Fed. Appx. 93, 95 (2d Cir. 2012) (holding that forfeiture actions under Title 19 are not subject to the innocent owner defense).

Next, Wattiker contends that the Amended Complaint alleges that the vehicles' VIN numbers and plates "have *not* been removed or obliterated." (DE# 29 at 4, italic in original). He is mistaken. The Amended Complaint repeatedly alleges that the vehicles' original frame-stamped VIN numbers and affixed VIN plates had been removed, obliterated, tampered with, or altered in various ways. (DE# 22, ¶ 7 o, v). For example, paragraph 7(v-2) alleges that "in both

instances the VIN has been ground off the frame or obliterated by a galvanization process;" paragraph 7(v-3) alleges that the VIN plate "is not in the same position as the plate the Land Rover affixed to vehicles it manufactured;" and paragraph 7v-15 alleges that the "VIN is missing from the frame." The premise of the pro se claimant's argument is inaccurate and provides no basis for dismissal.

Wattiker also challenges the Amended Complaint's assertion that the vehicles are subject to forfeiture pursuant to 19 U.S.C. § 1595a(c)(2)(A). The Amended Complaint seeks forfeiture under this statute on two grounds, i.e. the vehicles' importation was contrary to law due to noncompliance with federal motor vehicle safety standards, and the vehicles' importation was contrary to law due to noncompliance with EPA emission requirements. Wattiker complains that the Amended Complaint "does not identify a single law relating to health, safety or conservation" that is applicable to the seized Land Rovers. (DE# 29 at 6). The gist of his argument is that because the NHTSA could not identify the precise age of the vehicles, and that because the Amended Complaint does not identify the corresponding EPA emission standard for a particular year of vehicle, the two Land Rovers are not subject to forfeiture.

This argument fails for several reasons. The United States points out that the "claimant cannot circumvent the EPA's Clean Air Act standards by mudding the water as to the true age of the vehicle." (DE# 30 at 11, observing that the claimant's "argument simply runs in circles"). The United States also points out that the specific emission standard for each vehicle is irrelevant for purposes of this forfeiture action. (Id.). The United States explains that with respect to the claims under 19 U.S.C. § 1595a(c)(2)(A), each vehicle must comply with applicable safety/emission standards and have the requisite certifications. (DE# 30 at 7, 11). Claimant

admittedly tried to import vehicles without the required certifications. (See Answer, ¶¶ 29-30, admitting the vehicles lacked certificates of conformity).

The United States asserts that the "only way around the certification label requirement is for the importer to satisfy one or more exemptions." (Id. at 8). Wattiker sought exemptions, but at the administrative level, it was determined that he was not entitled to them. Although Wattiker spends many pages arguing that the vehicles were entitled to "age" exemptions, the Amended Complaint specifically alleges that a more recent remanufacture date was determined administratively and that none of the requested exemptions applied. (DE# 22, ¶ 7 v, ee). The United States also observes that the EPA "age" exemptions only apply to vehicles imported by an EPA-certified Independent Commercial Importer ("ICI") and/or certificate holders. (DE# 30 at 18-19, citing 19 C.F.R. § 12.73(e)). The Amended Complaint alleges that Wattiker was not an ICI or certificate holder. (¶ 7i).[3]

Taking the allegations as true for purposes of the motion to dismiss, the Amended Complaint adequately states claims for relief. Wattiker's repetitive contention that "the allegations in the Amended Complaint contain an inherent contradiction which makes it logically impossible to prove that the Defendant Vehicles are subject to forfeiture" is based on an erroneous premise and faulty reasoning. Such argument lacks merit. Although Wattiker states that he has "no obligation" to "guess what the Government intends to prove at trial" (DE# 29 at

---

[3] The Amended Complaint alleges that numerous underlying regulations and statutes were violated. See, e.g., ¶ 6(a-m), citing 40 C.F.R. § Part 85, Subpart P (providing that nonconforming vehicles can only be imported by an EPA-certified Independent Commercial Importer "ICI" who holds a valid certificate of conformity, unless an exemption applies); 40 C.F.R. § 85.1511(f)(2), designated as Code E on EPA Form 3502-1 (declaration that vehicle is over 20 years old and entitled to exemption from requirements of Clean Air Act if imported by a certificate holder, Form 3502-1 allows exemption for vehicles 21 years or older in original unmodified configuration, replacement engines must be of the same model); and 19 C.F.R. § 12.73 (setting forth procedures and requirements for importing vehicles under Clean Air Act regulations).

18), the Amended Complaint is sufficiently clear and does not require him to "guess" at the causes of action or pertinent facts. The Amended Complaint sufficiently states claims for relief.

**Arguments 3 and 4**

Next, Wattiker complains that this action is "out of time" based on "inexcusable and excessive delays by the Government in bringing this action." (DE# 29 at 1, 18-28). In attenuated fashion, he contends that such delay violated his right to due process under the Fifth Amendment to the United States Constitution and amounts to "laches requiring dismissal." The United States responds that "contrary to Claimant's assertion, the Government has proceeded with appropriate speed and deliberation in this matter." (DE# 30 at 20).[4]

Review of the record confirms that the administrative and judicial forfeiture proceedings were initiated in a reasonably timely manner. On February 13, 2013, CBP officers seized the two vehicles, and promptly sent Wattiker a notice. On March 27, 2013, Wattiker filed for administrative relief. After seeking expertise from the NHTSA, the CBP denied Wattiker's administrative petition on July 15, 2013. Wattiker filed a supplemental petition which required additional investigation. The supplemental petition was denied. On November 18, 2013, Wattiker requested that CBP send it to the U.S. Attorney's Office. Settlement negotiations over the next few months were not successful. On March 17, 2014, the NHTSA sought an evaluation by the EPA regarding the vehicles' admissibility for importation. Shortly thereafter on May 30, 2014, the United States filed the present civil forfeiture action. Contrary to the claimant's allegations, the record does not reflect "inexcusable and excessive delays" by the United States in bringing this forfeiture action.

---

[4] The United States also asserts that "[b]ecause Claimant attempted to import nonconforming Land Rover Defenders that were illegal to possess in this country, he has no cognizable property interest that could be violated." (DE# 30 at 21), citing United States v. Two Mitsubishi Pick-Up Trucks, 396 F. Supp. 2d 117, 119-20 (D.P.R. 2005). Even assuming *arguendo* that Wattiker has a cognizable property interest in the vehicles, his allegations of "delay" fall quite short of demonstrating any constitutional due process violation.

A significant portion of the elapsed time in this case is due to the claimant's own actions in pursuing an administrative petition and a supplemental petition (both of which required investigation by CBP and other federal agencies), as well as unsuccessful settlement negotiations. The United States Supreme Court has emphasized that "administrative proceedings are less formal and expensive than judicial forfeiture proceedings [and that] allowing the Government to wait for action on administrative petitions eliminates unnecessary and burdensome court proceedings." United States v. $8,850 in U.S. Currency, 461 U.S. 555, 566 (1983). Wattiker availed himself of administrative procedures and cannot characterize such time as "unreasonable delay" by the United States.

With respect to forfeiture proceedings, the Supreme Court has held that "[u]nlike the situation where due process requires a prior hearing, there is no obvious bright line dictating when a post-seizure hearing must occur." Id. at 562 (observing that "due process does not require federal Customs officials to conduct a hearing before seizing items subject to forfeiture. Such a requirement would make Customs processing entirely unworkable."). In the present case, the United States appropriately initiated this action after notification that administrative proceedings had concluded.

When weighing relevant factors (length of delay, reason for delay, claimant's assertion of right, and any prejudice to claimant), the Supreme Court has emphasized that "[t]he Government must be allowed some time to decide whether to institute forfeiture proceedings." $8,850 in U.S. Currency, 461 U.S. at 566 (adopting test of Barker v. Wingo, 407 U.S. 514, 530 (1972) and rejecting due process challenge to 18-month delay). The Supreme Court pointed out that investigation is "time-consuming." Id. at 568. The present case involved investigation by the CBP, NHTSA, EPA, and the Office of the United States Attorney. The record does not reflect

delay by the United States that would amount to a due process violation. See, e.g., <u>United States v. Turner,</u> 933 F.2d 240, 246 (4th Cir. 1991) (finding that lapse of 16 months between seizure of Corvette and filing of federal forfeiture action did not violate due process); <u>United States v. One 1954 Rolls Royce Silver Dawn, Serial No. SNF107</u>, 777 F.2d 1358, (9th Cir. 1985) (same, regarding lapse of seven months).

Here, the reasons for delay are legitimate and did not prejudice the claimant. In fact, the United States notes that Wattiker had previously attempted to import a Mini Cooper which was seized. (DE# 30 at 24). CBP subsequently granted administrative relief, and the vehicle was returned to him. The United States points out that Wattiker has utilized the CBP administrative process and is familiar with such proceedings. He was promptly notified of the CBP's seizure of the noncomplying Land Rovers, has been on notice of forfeiture proceedings, and has not been hampered in pursuing his claim to the vehicles. Under the circumstances, his allegations of delay provide no basis for dismissal.

**Argument 6 and 7**

Finally, although the claimant characterizes the seizure of the two vehicles as the "deliberately unlawful exercise of police power," the Amended Complaint cites relevant customs statutes and states several proper grounds for CBP agents to seize the vehicles. Specifically, the CBP inspectors were authorized by federal statute to seize the vehicles pursuant to Title 19 U.S.C. § 1595a(c)(2) ("Merchandise introduced contrary to law"), which provides:

> Merchandise which is introduced or attempted to be introduced into the United States contrary to law shall be treated as follows: … (2) The merchandise may be seized and forfeited if-- (A) its importation or entry is subject to any restriction or prohibition which is imposed by law relating to health, safety, or conservation and the merchandise is not in compliance with the applicable rule, regulation, or statute…"

The CBP inspectors were also authorized to seize the vehicles pursuant to the enforcement provisions of the Tariff Act of 1930. Specifically, 19 U.S.C. § 1627a(a)(1)(B) ("Unlawful importation … of certain vehicles; inspections"), provides in relevant part that:

> Whoever knowingly imports … or attempts to import … (B) any self-propelled vehicle or part of a self-propelled vehicle from which the identification number has been removed, obliterated, tampered with, or altered …shall be subject to a civil penalty in an amount determined by the Secretary, not to exceed $10,000 for each violation.[5]

The statute authorizes seizure of a vehicle if its VIN number has been removed, obliterated, tampered with, or altered. 19 U.S.C. § 1627a(a)(2) ("Any violation of this subsection shall make such self-propelled vehicle, vessel, aircraft, or part thereof subject to seizure and forfeiture under this chapter."). Thus, by definition, the seizure of the nonconforming Land Rovers by customs inspectors was not a "deliberately unlawful exercise of police power."[6] Wattiker's mischaracterization of the seizure provides no basis for dismissal.

Wattiker also challenges "the Government's motive in pursuing the goal of destruction of the Defendant Vehicles" and claims it is "based on an improper relationship between the NHTSA and Land Rover, a private company." Contrary to his contention, the destruction of seized vehicles is a matter governed by the federal regulations, not any personal "motive" that can be attributed to the Government at large or to any purportedly "improper relationship" with the manufacturer of the vehicles. Although Wattiker suggests in conclusory fashion that it was improper for the NHTSA to contact Range Rover for information about the manufacturing

---

[5] The statute defines the term "self-propelled vehicle" to include any automobile. 19 U.S.C. § 1627a(c)(1).

[6] The Secretary of Transportation is authorized to issue appropriate standards for motor vehicles and their equipment. See National Traffic and Motor Vehicle Safety Act of 1966, Pub.L. 89-563, 80 Stat. 718, as amended, 15 U.S.C. § 1381 et seq.; 49 C.F.R. § 1.50(a) (1994) (implementing regulations); and Freightliner Corp. v. Myrick, 514 U.S. 280, 282 (1995). Under such authority, the NHTSA has promulgated regulations governing the declarations that an importer must make for an imported vehicle regarding safety, bumper, and theft prevention standards. See 49 C.F.R. § 591.5 ("Declarations required for importation"). Statutorily-authorized seizure arising from violation of such regulations is not a "deliberately unlawful exercise of police power."

specifications of its vehicles, he points to no reason why the NHTSA could not do so. The United States points out that Land Rover may be utilized as an expert witness in this case and will be subject to cross-examination at trial. The claimant's speculation about the purported "improper relationship" of the NHTSA and Range Rover is irrelevant on review of a motion to dismiss and provides no basis for dismissal.

## **RECOMMENDATION**

Accordingly, the Magistrate Judge **RECOMMENDS** that the pro se claimant's "Motion to Dismiss" (DE#29) be **DENIED**.

_____
MARY GORDON BAKER
UNITED STATES MAGISTRATE JUDGE

July 8, 2015
Charleston, South Carolina

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge.  **Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections.**  "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d).  Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

> **Robin L. Blume, Clerk**
> **United States District Court**
> **Post Office Box 835**
> **Charleston, South Carolina 29402**

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.**  28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).